970 So.2d 429 (2007)
Mario DIAZ, Appellant,
v.
Lynn DIAZ, Appellee.
No. 4D07-487.
District Court of Appeal of Florida, Fourth District.
November 28, 2007.
*430 Andrew C. Barnard of Andrew C. Barnard, P.A., Miami, for appellant.
No appearance for appellee.
POLEN, J.
Appellant Mario Diaz appeals a final judgment of dissolution of marriage and the denial of a motion for rehearing on the final judgment. Diaz raises several issues in this appeal, among them the trial court's valuation of the parties' marital assets. Diaz argues the trial court erred by refusing to consider the value of the former wife's survivor benefits in his pension, in failing to consider the impact of federal income taxes on his Deferred Retirement Option Program account (DROP). We find merit to these arguments and reverse the trial court's ruling on these two points and affirm on all other points.
"The standard of review of a trial court's determination of equitable distribution is abuse of discretion." Kovalchick v. Kovalchick, 841 So.2d 669, 670 (Fla. 4th DCA 2003). "The distribution of marital assets or liabilities must be supported by *431 factual findings in the judgment based on competent substantial evidence." Crockett v. Crockett, 708 So.2d 329, 330 (Fla. 1st DCA 1998). "It is well settled that a spouse's entitlement to pension or retirement benefits must be considered a marital asset for purposes of equitably distributing marital property." Johnson v. Johnson, 602 So.2d 1348, 1349 (Fla. 2d DCA 1992). "Once a pension, or other type of retirement benefit, is considered a marital asset, that asset may be treated as property subject to equitable distribution or as a source of support obligations." Id.
Mario argues the trial court erred in undervaluing the former wife's share of his pension. Mario is a police officer with the City of Fort Lauderdale and had a pension and DROP account through the City. At some point before the parties decided to divorce, Mario had opted to take an irrevocable option requiring him to name a beneficiary in the event he died before reaching a certain age, and had named the former wife as the beneficiary. The option was irrevocable in the sense that Mario was required to name someone as a beneficiary although he had the option to change who was designated as the beneficiary if he so desired.
When dividing the parties' marital assets, the trial court assigned a value to Mario's pension and determined the value of the former wife's share in this pension without valuing the worth of the former wife's survivor benefits to the pension. Mario's expert assigned a value of $155,000 to the former wife's survivor benefits while the former wife's expert did not assign a value to the benefits. The trial court refused to consider this valuation as Mario's pension was received through a municipality, making it not subject to a Qualified Domestic Relations Order (QDRO). A QDRO is, in pertinent part, a "domestic relations order . . . which creates or recognizes the existence of an alternate payee's right to, or assigns to an alternate payee the right to, receive all or a portion of the benefits payable with respect to a participant under a plan." DeSantis v. DeSantis, 714 So.2d 637 (Fla. 4th DCA 1998). As a result, Mario's employer would not be precluded from allowing Mario to change the beneficiary to someone other than the former wife.
The trial court determined it could not directly enforce the payment of these benefits to the former wife, hence it refused to include them in the valuation of assets. The former wife's expert testified that it would be difficult for the trial court to valuate the survivor benefits or to enforce the benefits, while Mario's expert valued the survivor benefits and testified it would not be difficult to secure payment of these benefits to the former wife.
We find the trial court erred in failing to include the value of the survivor benefits of Mario's pension. Survivor benefits in pensions are considered marital property. See Carlton v. Carlton, 876 So.2d 1267, 1271 (Fla. 2d DCA 2004). While it is true that Mario could change the beneficiary to someone other than the former wife, the evidence showed that at the time of the parties' divorce, the former wife was the designated recipient of the survivor benefits. Moreover, the decision to appoint a beneficiary was an irrevocable decision that resulted in a ten to twelve percent reduction in Mario's payout, and changing the beneficiary would result in further reductions. The survivor benefits, which were assigned to the former wife during the course of the marriage, were marital property that should have been included in the valuation of assets and failure to do so resulted in an inequitable distribution of assets.
*432 While the trial court may not be able to issue a QDRO keeping Mario from designating a new beneficiary to the survivor benefits, it can fashion another remedy, such as insurance or giving Mario and his employer the opportunity to agree not to change the beneficiary. "The trial court possesses broad discretionary authority to do equity between the parties when making financial awards in dissolution proceedings." Carollo v. Carollo, 920 So.2d 16, 18 (Fla. 3d DCA 2004). We reverse this issue and remand to the trial court to hold an evidentiary hearing allowing both sides to present evidence of the value of the survivor benefits to be used in recalculation of the marital distribution.
Mario next argues the trial court erred in not considering the tax consequences on the distribution of his pension and DROP account. While "a trial court should ordinarily consider income tax consequences in the evaluation of marital assets, we also recognize that `a trial court cannot be faulted for not considering the tax consequences if counsel for the parties neglect to present evidence on the subject.'" Kadanec v. Kadanec, 765 So.2d 884, 886 (Fla. 2d DCA 2000). When evidence of a tax impact is presented, it is error for the trial court to fail to consider these consequences. Sharon v. Sharon, 862 So.2d 789, 791 (Fla. 2d DCA 2003).
In this case, both parties' experts agreed that Mario's pension would be tax-affected. The former wife's expert testified that Mario's pension would be taxed at a 22-25% tax rate and that the parties could avoid tax consequences on the DROP account by rolling it over into another retirement account. Mario's expert testified that the former wife's portion of the DROP account would be tax-affected as there was no way for her to roll the payout directly over into another retirement account as Mario could not directly assign the money to her and instead had to withdraw the funds with which to pay her portion.
We find the trial court erred in failing to consider the tax consequences to Mario's pension and DROP account when dividing the parties' assets, as there was evidence presented that Mario's pension and his DROP account would be tax-affected. We reverse on this issue and remand to the trial court for an evidentiary hearing to determine the consequences of taxation on Mario's pension and DROP account, as well as alternative methods of minimizing the tax consequences to both parties.
Mario also raises an issue concerning the trial court's valuation of the former wife's automobile when distributing the parties' assets, asserting the trial court was not following its original valuation date. "The trial court's valuation must be based on competent evidence." Augoshe v. Lehman, 962 So.2d 398, 403 (Fla. 2d DCA 2007). The former wife filed several amended financial affidavits prior to trial, listing her vehicles' worth as $10,000. However, in the schedule of assets and liabilities used as an exhibit for trial, the former wife lists the value of her automobile as $1,500.00. We find there was no error in the trial court's reliance on the former wife's exhibit at trial which recalculated the value of the automobile, as there is no evidence that the actual value changed after the filing date, rather than the value being corrected from an erroneous value previously asserted.
We reverse the trial court's distribution of marital property as it relates to Mario's pension and DROP account, to consider the value of the survivor benefits to Mario's pension, as well as to consider the tax impact on the distribution of Mario's pension and his DROP account, and remand for an evidentiary hearing to allow both *433 parties to present evidence on these two issues. We affirm as to all other issues.
KLEIN and MAY, JJ., concur.